**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DEVON ENERGY CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1689 |
| | § | |
| DONALD C. WESTACOTT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case presents an unusual twist to issues that arise all too often when an employee leaves to work for a competitor and litigation results. The former employer often alleges that the employee downloaded or transmitted proprietary data and used it in his new job. In this case, the former employer, Devon Energy, alleges that its employee, Donald Westacott, a petrophysicist, erased proprietary data from the hard drive of the computer workstation he used before leaving to take a new job. Devon Energy alleges that Westacott's action destroyed the only source of a reservoir analysis that he was paid $125,000 to create. Westacott acknowledges that he deleted files from the computer he used at Devon Energy. Westacott vigorously disputes that he destroyed proprietary data, much less the only source of such data, or that he deleted Devon Energy files with the intent to deprive the company of access to them.

Devon Energy asserts claims for misappropriating and converting trade secrets and proprietary data and for violating the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Devon Energy has moved for partial summary judgment that Westacott is liable under all three claims, reserving damages for later determination. (Docket Entry No. 37). Westacott responded,

(Docket Entry No. 46), Devon Energy replied, (Docket Entry No. 56), and Westacott filed a surreply, (Docket Entry No. 66). Westacott also moved to strike corrections to the deposition testimony of his supervisor at Devon Energy, William S. Coffey. Westacott moved under Federal Rule of Civil Procedure 30(e), (Docket Entry No. 39). Devon Energy responded, (Docket Entry No. 54). Devon Energy and Westacott have also filed motions *in limine*. (Docket Entry Nos. 42, 44).

Based on the record; the motions, responses, reply, and surreply; and the relevant law, this court denies Westacott's motion to strike the deposition testimony and denies Devon Energy's motion for partial summary judgment. The parties' motions *in limine* are denied without prejudice to reasserting them in light of this Memorandum and Opinion. A status conference is set for **April 8, 2011** at 5:00 p.m.

The reasons for these rulings are explained below.

## I.    Background

The factual background is drawn from the extensive summary judgment record.[1] Westacott

---

[1]   The summary judgment record consists of: excerpts from Westacott's deposition, (Docket Entry No. 38, Ex. A); the affidavit of William S. Coffey, Westacott's supervisor at Devon Energy, (*id.*, Ex. B); Devon Energy's August 28, 2008 "Weekly Explorer," (*id.*, Ex. B-1); the affidavit of Wayne Sutherland, a business information and technology manager for Devon Energy, (*id.*, Ex. C); Sutherland's resume, (*id.*, Ex. C-1); Devon Energy's Don Westacott Investigation Summary Report, (*id.*, Ex. C-2; Docket Entry No. 48, Exs. O, P (excerpts); Docket Entry No. 53, Ex. Q(excerpt)); the affidavit of Thomas F. Taylor, a corporate security manager at Devon Energy, (Docket Entry No. 38, Ex. D); Taylor's resume, (*id.*, Ex. D-1); notes from Taylor's February 6, 2009 interview of Westacott, (*id.*, Ex. D-2); Devon Energy's Information System General Usage Policy, (*id.*, Ex. D-3); Devon Energy Code of Business Conduct and Ethics, (*id.*, Ex. D-4; the affidavit of Lance Watson, the vice president for case management at Avansic, Inc., (*id.*, Ex. E); Watson's resume, (*id.*, Ex. E-1); Avansic's forensic analysis report, (*id.*, Ex. E-2; Docket Entry No. 47, Ex. N); screenshots from the Kill Disk disk-wiping program, (Docket Entry No. 38, Exs. E-3–E-8; Docket Entry No. 52, Ex. W); excerpts from the deposition of Ray Ambrose, (Docket Entry No. 47, Ex. A; Docket Entry No. 47, Ex. G); excerpts from the deposition of Richard Hand, (Docket Entry No. 47, Ex. B); excerpts from the deposition of Jeffrey Hall, (*id.*, Ex. C); excerpts from the deposition of William Coffey, (*id.*, Ex. D; Docket Entry No. 57, Ex. F); excerpts from the deposition of  Bradley Foster, (Docket Entry No. 47, Ex. E); excerpts from the deposition of  Matthew Hollingsworth, (*id.*, Ex. F); Westacott's employment offer letter, (*id.*, Ex. G); Devon Energy's senior petrophysicist profile, (*id.*, Ex. H); Devon Energy's records of computer support and assistance to Westacott, (*id.*, Ex. I); Devon Energy's October 16, 2008 "Weekly Explorer," (*id.*, Ex. J); Westacott's Reservoir Characterization Barnett Shale Fort Worth Basin Engineering Memo, (*id.*, Ex. K); a call log reflecting Westacott's January 12, 2009 telephone call to Jon Stignant, (*id.*, Ex. L); Westacott's January 9, 2009 e-mail to Coffey, (*id.*, Ex. M); Westacott's November 4, 2008 e-mail to Coffey, (Docket Entry No. 48, Ex. R); Westacott's January 27, 2009 e-mail to Ambrose, Hand, Coffey and others, (*id.*, Ex. S); Westacott's November 19, 2008 e-mail to

---

is a petrophysicist.  Devon Energy is an energy company.  Devon Energy hired Westacott in August 2008 to work in its Oklahoma City, Oklahoma office.  His salary was $200,000.  William Coffey was Westacott's supervisor.

Among Westacott's duties was an analysis of the gas reserves in the Barnett Shale, which is near Fort Worth, Texas.  Westacott's workstation was equipped with a Devon Energy computer that had a 500-gigabyte hard drive.  Devon Energy had a computer usage policy that made it clear that "computer equipment and internet access" are for "business use."  (Docket Entry No. 37, Ex. D-4 at 1).  The policy prohibited "[d]eliberate introduction of malicious programs into the network or server and [a]dding, removing, and/or modifying of Information Systems without prior consent from" the IT department.  (*Id.* at 2).  Under the usage policy, "[a]ll information used to conduct Company business," which "could include information created pursuant to employees' personal use of Devon equipment," is Devon Energy property.  (*Id.*).

In January 2009, Westacott began to consider leaving Devon Energy.  On January 20, Westacott gave notice that he would resign.  His final work day was January 29.  Before leaving, Westacott decided to erase files on the workstation computer he had used at Devon Energy.  Westacott wanted to ensure that he removed all the personal files he had on that computer, including financial information and applications he had installed.  Westacott asserts that he told his supervisor, Coffey, of his plans.  (Docket Entry No. 51, Ex. Z, ¶ 28).  Westacott used a program called "Kill Disk."

Westacott asserts that he intended to delete only his "personal directories."  (Docket Entry

---

Coffey and others, (*id.*, Ex. T); Devon Energy's computer analysis of Westacott's hard drive, (Docket Entry Nos. 49–50, Ex. U); Ambrose's January 12, 2009 e-mail to Westacott, Hand, and others, (Docket Entry No. 51, Ex. V); Devon Energy's Code of Business Conduct and Ethics, (*id.*, Ex. X); Devon Energy event log reports, (*id.*, Ex. Y); Westacott's affidavit, (*id.*, Ex. Z); the affidavit of Scott Brazil, Westacott's attorney, (*id.*, Ex. A-1).

No. 38, Ex. A at 87).  "If anything else was removed," he asserts, "it was purely accidental." (Docket Entry No. 51, Ex. Z, ¶ 50).  Westacott testified that he also wanted to comply with Devon Energy's policy against unsupported software.  (*Id*., ¶ 27).  Westacott points to an October 16, 2008 internal Devon Energy IT newsletter stating that "[b]oth employees and contractors are required to clean up and remove unsupported, non-approved software and applications from their Devon computers to protect company information and reduce unnecessary business costs."  (Docket Entry No. 47, Ex. J).  Westacott contends that he intended to remove software and applications that had not been provided by Devon Energy.  Westacott asserts that Coffey was aware that he had installed them on his computer and that he was deleting these and other files.  (Docket Entry No. 38, Ex. A at 51; Docket Entry No. 51, Ex. Z ¶ 20).

Among the files deleted was a 1.3-gigabyte file named "GXDB.db."  This file contained data from Westacott's work on the Barnett Shale analysis.  Westacott contends that he did not believe he was destroying the only source for this file.  He contends that he had backed up all his work files on his password-protected network drive and that Devon Energy backed up that drive daily.  (Docket Entry No. 51, Ex. Z, ¶¶ 21, 23, 36 ("Any information that I gathered or acquired was placed on the network H-drive AND left on the Devon mainframe.")).  He also contends that the GXDB.db file was simply a copy of a Devon Energy database that he was going to use to do his Barnett Shale analysis.  (*Id.*).

Coffey, Westacott's supervisor, testified that Westacott showed him screenshots of work on the Barnett Shale analysis after Westacott announced his resignation.  (Docket Entry No. 38, Ex. B, ¶ 8).  On January 30, the day after Westacott left Devon Energy, Coffey tried to access Westacott's Barnett Shale files.  Neither Coffey nor anyone in Devon Energy's IT department was able to do so.

4

(*Id.*).  Coffey testified that Westacott never told him he planned to erase the hard drive.  (*Id.*, ¶ 11).

When Coffey asked Westacott about the Barnett Shale file, Westacott responded that he "had no

idea" what had happened.  (*Id.*, ¶¶ 10, 11).

On February 6, Thomas F. Taylor, a manager of corporate security for Devon Energy, and

another Devon Energy employee, Gerald Colca, went to Westacott's home to ask about the missing

information.  (*Id.*, Ex. D).  Taylor testified that Westacott denied erasing the computer hard drive.

Westacott told Taylor that he deleted some personal files but was sure he did not accidentally delete

company files.  (*Id.*).  Taylor also testified that Westacott said that he had some work files on a

thumb drive.  Although initially willing to give the thumb drive to Devon Energy, Westacott

ultimately refused to do so.  (*Id.*).

Devon Energy sued Westacott on June 3, 2009.  It accused Westacott of conversion and

misappropriation of trade secrets and of violating the CFAA.  Devon Energy has moved for partial

summary judgment on liability.  The claims rest on Westacott's deletion of the Barnett Shale data

from the Devon Energy computer hard drive.

Each theory of liability is analyzed below.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the

burden of identifying those portions of the record it believes demonstrate the absence of a genuine

issue of material fact."  *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond

peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Mkts. LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 780 F.2d at 1194). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Meecorp Capital Mkts.*, 265 F. App'x at 158 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## III.   Analysis

### A.   Westacott's Objection to Coffey's Changed Deposition Testimony

Coffey gave the following deposition testimony:

> Q.   All right.  Did he ever, in your opinion, lie to you?
>
> A.   I don't know.
>
> Q.   Can you think of an instance where he did?
>
> A.   I'm not aware of one.

(Docket Entry No. 47, Ex. D at 67).

Coffey timely submitted the following changes to this testimony:

> On reflection, and based upon what I now know regarding Mr. Westacott's actions, I believe that he was not truthful with me in the telephone conversation I had with him on February 7, 2009, my notes of which have been marked as Exhibit 2.  Specifically, he said "all of the data is there" on the network and "all data is secured on the network (H drive)" which I now know was not true.  He also said "I have no idea what happened to the D drive," which I now also know not to be true.  His statement "equipment fails" "things break" was at minimum misleading, because he failed to reveal that he had used a disc wiping tool on the D:\ drive.  His statement that "I will swear under oath that it was working when I left" was also not true based on the forensic analysis done.  I also believe that the claim "I don't have any use for the data" was not true.

7

(Docket Entry No. 54, Ex. A).  In the column labeled "Reason," he wrote: "Clarification."  (*Id.*).

Federal Rule of Civil Procedure 30(e)(1) allows a deponent to make changes in "form or substance" to the deposition.  Rule 30(e)(1) states:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
>> (A)  to review the transcript or recording; and
>>
>> (B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

FED. R. CIV. P. 30(e)(1).  Westacott argues that Rule 30(e) prohibits the changes to Coffey's testimony.  Alternatively, he contends that Coffey's explanation was insufficient.

The traditional view is that Rule 30(e) permits a deponent to change deposition testimony by timely corrections, even if they contradict the original answers, giving reasons.  *See, e.g.*, *Eicken v. USAA Fed. Savings Bank*, 498 F. Supp. 2d 954, 961–62 (S.D. Tex. 2007) (permitting changes to deposition testimony even when the majority of the 45 changes did not merely supplement but reversed the original answers); *EEOC v. J.H. Walker, Inc.*, Civ. A. No. H-05-2232, 2007 WL 172626, at *10–13 (S.D. Tex. Jan. 18, 2007) (discussing both the majority and minority approach and applying the former); *Medina v. Horseshoe Entm't*, Civ. A. No. 05-0097, 2006 WL 2038057, at *4 (W.D. La. July 19, 2006) (allowing contradictory corrections because "[u]nder the broad interpretation of Rule 30(e) . . . these contradictions and substantive alterations are permitted."); *Agrizap, Inc. v. Woodstream Corp.*, 232 F.R.D. 491, 493 n.2 (E.D. Pa.2006) ("After satisfying the procedural requirements of Rule 30(e), the majority view among federal decisions interprets Rule 30(e) to permit the deponent to make any kind of changes (corrections based on a claim of

transcription error, or any other substantive or procedural changes.)"); *Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005) (finding that the plaintiff was entitled to correct his deposition, even though the changes altered his testimony in substantive and even contradictory respects, but that the defendants could then inquire about the reasons for the changes and ask follow-up questions); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); *Foutz v. Town of Vinton*, 211 F.R.D. 293, 295 (W.D. Va. 2002); *DeLoach v. Philip Morris Cos.*, 206 F.R.D. 568, 572–73 (M.D. N.C. 2002); *Elwell v. Conair, Inc.*, 145 F. Supp. 2d 79, 86–87 (D. Me. 2001); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D. W. Va. 2001); *Titanium Metals, Corp. v. Elkem Mgmt., Inc.*, 191 F.R.D. 468, 472 (W.D. Pa. 1998); *U.S. ex rel. Burch v. Piqua Eng'g, Inc.*, 152 F.R.D. 565, 566–67 (S.D. Ohio 1993); *Sanford v. CBS, Inc.*, 594 F. Supp. 713, 714–15 (N.D. Ill. 1984); *Lugtig v. Thomas*, 89 F.R.D. 639, 641–42 (N.D. Ill. 1981); *Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337, 340 (S.D. N.Y.1970); *Colin v. Thompson*, 16 F.R.D. 194, 195 (W.D. Mo.1954); *De Seversky v. Republic Aviation Corp.*, 2 F.R.D. 113, 115 (E.D. N.Y. 1941).

Under this approach, the fact and extent of the change are treated as subjects for impeachment that may affect a witness's credibility. *See Lugtig*, 89 F.R.D. at 642 ("The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case."). The changed version does not replace the original testimony, which remains part of the record on which the witness may be examined and impeached.

*See Podell*, 112 F.3d at 103 ("when a party amends his testimony under Rule 30(e), '[t]he original answer to the deposition questions will remain part of the record and can be read at the trial'") (citation omitted); *Medina*, 2006 WL 2038057, at *4 ("It should be noted that the original answers are not to be stricken, and that the Defendant may use the original answers for impeachment purposes where appropriate.").

The Second Circuit has explicitly adopted this approach. *Podell*, 112 F.3d at 103. Six courts of appeals have followed a range of more restrictive approaches. One court of appeals permits a deponent to correct only typographic and transcription errors. *See Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 566 (6th Cir. 2009) (unpublished) ("Rule 30(e) does not allow one to alter what was said under oath." (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 WL 343178, at *4 (S.D. Ohio Feb. 7, 2008)). *See also Greenway v. International Paper*, 144 F.R.D. 322, 325 (W.D. La.1992) ("the Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all and then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.").

Other courts apply the analysis used in the "sham-affidavit" rule to Rule 30(e) corrections. This approach allows such corrections if the deponent can provide a reason showing that the changes were not simply "purposeful rewrites tailored to manufacture an issue of material fact." *Hambleton Bros. Lumber Co. v. Balkin Enterprises.*, 397 F.3d 1217, 1225 (9th Cir. 2005); *accord EBC, Inc. v. Clark Building Sys., Inc.*, 618 F.3d 253, 268 (3d Cir. 2010); *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) ("We see no reason to treat Rule 30(e) corrections differently than affidavits, and we hold that [the plaintiff's] attempt to amend his deposition testimony must be

evaluated under [the sham affidavit doctrine].”); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (finding that Rule 30(e) changes that contradict the original deposition testimony should be dealt with the same way as subsequent affidavits that contradict a witness’s earlier deposition).  Concern that changed deposition testimony “could risk the defeat of summary judgment in a large swath of cases for which a Rule 56 disposition otherwise would be appropriate” drives this approach.  *EBC, Inc.*, 618 F.3d at 268.

The Seventh and Tenth Circuits appear to follow a relatively strict form of the sham-affidavit approach, allowing the deponent to “change his deposition from what he said to what he meant” if the change does not directly contradict the original testimony, despite the fact that there may be “a questionable basis” for the change.  *Thorn*, 207 F.3d at 389.  But “a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a ‘not.’”  *Thorn*, 207 F.3d at 389; *see also Hambleton*, 397 F.3d at 1226 (“We agree with our sister circuits’ interpretation of FRCP 30(e) on this point, and hold that Rule 30(e) is to be used for corrective, and not contradictory, changes.”).

The Third Circuit takes a more flexible, case-specific approach to the sham-affidavit analysis, allowing “contrary errata if sufficiently persuasive reasons are given, if the proposed amendments truly reflect the deponent’s original testimony, or if other circumstances satisfy the court that amendment should be permitted.”  *EBC, Inc.*, 618 F.3d at 270.  The Third Circuit emphasizes that “[e]ach case will present fact-sensitive circumstances, and we are disinclined to prescribe a one-size-fits-all rule.”  *Id.*

The strict approach to changes under Rule 30(e) is unpersuasive.  The case-specific approach, such as that followed by the Third Circuit, is consistent with Rule 30(e), which expressly

11

contemplates "changes in form or substance" accompanied by a signed statement reciting the reasons for the changes.  The narrow view that prohibits all substantive changes, including corrective changes, is inconsistent with the Rule and its purpose.  The Rule allows changes in substance for legitimate reasons, such as to correct a misstatement or an honest mistake.  The more flexible approach allows for legitimate corrective changes while implementing adequate safeguards to prevent abuse.  *See Reilly*, 230 F.R.D. at 490.

In this case, Coffey's correction to his deposition is a change in substance.  But it does not squarely contradict his previous answer that he was not sure whether Westacott had been dishonest, but it clearly changes that answer.  Coffey explained that additional thought about the question led him to change his answer.  Coffey's change is permissible because he has stated a reason and given supporting details.  The motion to strike is denied.  Westacott may use the original answers for impeachment.  As noted, however, allowing this testimony does not lead to granting the summary judgment motion.

### A.    Misappropriation

Devon Energy asserts its misappropriation claim under Texas and Oklahoma law.  Texas law defines a "trade secret" as a "formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it."  *Triple Tee Golf*, 485 F.3d at 261 (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991)).

"To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3)

show that the defendant used the trade secret without authorization from the plaintiff." *Gen.*
*Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149–50 (5th Cir. 2004).   To determine whether
information is a trade secret protected from disclosure or use, a court must examine six "relevant
but nonexclusive" criteria: "(1) the extent to which the information is known outside the business;
(2) the extent to which it is known by employees and others involved in the business; (3) the extent
of measures taken to safeguard the secrecy of the information; (4) the value of the information to
him and to his competitors; (5) the amount of effort or money expended in developing the
information; and (6) the ease or difficulty with which the information could be properly acquired
or duplicated by others." *Id.* at 150 (citing *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003)); *T-N-T*
*Motorsports*, *Inc. v. Hennessey Motorsports*, *Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st
Dist.] 1998, pet. dism'd).  All six factors need not be satisfied "because trade secrets do not fit neatly
into each factor every time." *Gen. Universal Sys.*, 379 F.3d at 150 (quoting *Bass*, 113 S.W.3d at
740).

Leaving aside whether the Barnett Shale information was a trade secret and whether there
was a breach of a confidential relationship or improper acquisition, Devon Energy is not entitled to
summary judgment on its misappropriation claim because the evidence does not establish as a matter
of law that deleting the Barnett Shale data was "use" of that data.  In *General Universal Systems*,
the Fifth Circuit quoted the *Restatement (Third) of Unfair Competition*'s commentary's definition
of use:  "As a general matter, any exploitation of the trade secret that is likely to result in injury to
the trade secret owner or enrichment to the defendant is a 'use' under this Section."  500 F.3d at 451
(quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40).  Emphasizing its alleged injury,
Devon Energy argues that deleting the Barnett Shale data satisfies the "use" element.  The *General*

13

*Universal Systems* court also recognized, however, that "Texas intermediate courts have stated, "'[u]se" of a trade secret means commercial use, by which a person seeks to profit from the use of the secret.'" *Id.* at 450 (quoting *Trilogy Software Inc. v. Calidus Software, Inc.*, 143 S.W.3d 452, 464 (Tex. App.—Austin 2004, pet. denied)).[2]  The court held that the record satisfied both tests, so it had no occasion to determine to what extent they differed or which better reflected Texas law. *See id.* at 451.  Devon Energy's motion ignores the line of precedent requiring commercial use.  It does not appear to contend that Westacott attempted to profit by deleting the Barnett Shale data.

Devon Energy has not cited a case in which a court applying the law of Texas held that "use" that was not intended to generate a profit constituted use for the purposes of trade-secret misappropriation.  Devon Energy is not entitled to summary judgment on this claim under Texas law.  Devon Energy has not cited cases applying Oklahoma law to support its argument that deleting information is a "use" of the secret.  Even if it did, Devon Energy would need to establish that Oklahoma law applies.  In addition to the deficiencies in the legal basis for summary judgment, there are disputed fact issues that are material to the misappropriation and conversion claims.  Devon Energy and Westacott vigorously dispute whether, when Westacott deleted the files from the computer hard drive, his work on the Barnett Shale analysis remained on Devon Energy's network.  Westacott contends that his work-related files were backed up on his network drive; Devon Energy

---

[2]  *See also Cudd Pressure Control, Inc. v. Roles*, 328 F. App'x 961, 965 (5th Cir. 2009); *Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 720 (5th Cir. 2004); *Terra Nova Scis. v. JOA Oil & Gas Houston, LLC*, 738 F. Supp. 2d 689, 696 (S.D. Tex. 2010); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 666 (S.D. Tex. 2010); *Allchem Performance Prods., L.P. v. Frey*, Civ. A. No. 3:07-CV-1696-M, 2008 WL 1848461, at *4 (N.D. Tex. Apr. 21, 2008); *EEMSO, Inc. v. Compex Techs., Inc.*, No. 3:05-CV-0897-P, 2006 WL 2583174, at *5 (N.D. Tex. Aug 31, 2006); *Green Gardening Packaging v. Schoenmann Produce Co.*, No. 01-09-00924-CV, 2010 WL 4395448, at *8 (Tex. App.—Houston [1st Dist.] Nov. 4, 2010, no pet.); *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 476–77 (Tex. App.—Amarillo 2001, pet. denied); *Tavana v. GTE Sw. Inc.*, No. 05-97-00664-CV, 1999 WL 512624, at *4 (Tex. App.—Dallas July 21, 2009); *Atl. Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 422 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (citing *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1205 (5th Cir. 1986)).

contends that its forensic analysis showed that the information was deleted from every source. Devon Energy is not entitled to summary judgment that Westacott misappropriated its trade secrets.

### B.    Conversion

The parties have briefed the conversion claim only under Texas law.  In Texas, conversion has four elements: (1) the plaintiff's legal possession of the property or was entitlement to it; (2) the defendant's wrongfully exercise of dominion and control over the property, excluding the plaintiff; (3) the plaintiff's demand of the property's return; and (4) the defendant's refusal. *Arthur W. Tifford PA v. Tandem Energy Corp.*, 562 F.23d 699, 705 (5th Cir. 2009) (citing *Small v. Small*, 216 S.W.3d 872, 877 (Tex. App.—Beaumont 2007, pet. denied)).  "[F]ormal demand and refusal are not necessary when the circumstances and the acts of the possessor authorize a finding . . . of a clear repudiation of the owner's rights and are tantamount to a refusal after demand." *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F. 2d 635, 651 (5th Cir. 1991) (quoting *Loomis v. Sharp*, 519 S.W.2d 955, 958 (Tex. App.—Texarkana 1975, writ dism'd)).

The property that Devon Energy alleges Westacott converted is a computer file.  The leading case recognizing the right to bring a conversion action based on a digital file is *Thyroff v. Nationwide Mutual Insurance Co.*, 864 N.E.2d 1272 (N.Y. 2007).  In *Thyroff*, the New York Court of Appeals considered whether digital computer documents could be the basis for a conversion claim.  Thyroff, a former Nationwide insurance agent, sought access to personal and business files stored on a Nationwide computer after the company terminated his employment.  Nationwide refused and Thyroff sued Nationwide for conversion in federal court.  Thyroff lost and appealed to the Second Circuit.  That court certified to the state court the following question: "Is a claim for the conversion of electronic data cognizable under New York law?" *Id.*  The New York Court of

Appeals began by acknowledging that it had not previously allowed intangible property to be the basis of a conversion claim. *Id.* at 1275–76. The court noted that the merger rule, which it had adopted, allowed claims for converting intangible rights reduced to physical form, citing stock certificates and tape recordings as examples. *Id.* at 1276. The court observed the disagreement over whether electronic data should be protected by a claim for conversion or by tort claims for improper competition. *Id.* at 1277. Conversion, the court concluded, "must keep pace with the contemporary realities of widespread computer use." *Id.* at 1278. In light of widespread use of computers and the importance of information, not just physical objects, the court saw no "reason in law or logic why this process of virtual creation should be treated any differently from production by pen on paper or quill on parchment." *Id.* at 1277.

Courts interpreting Texas law have adhered to the merger rule, requiring a physical object to be the basis for a conversion claim. *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 778 (S.D. Tex. 2010) ("[C]ourts have held that conversion law does not apply to forms of intangible property which do not generally merge with a document."); *Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 560 (N.D. Tex. 2009); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997); *Oxy USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 284 (Tex. App.—Corpus Christi 2005, pet. denied) ("Texas recognizes conversion of intangible property where the underlying intangible right has been merged into a document and that document has been converted."); *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex.App.-Dallas 2001, no pet.) ("Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."); Courtney W. Franks, Comment, *Analyzing the Urge to Merge: Conversion*

*of Intangible Property and the Merger Doctrine in the Wake of* Kremen v. Cohen, 42 HOUS. L. REV.

489, 521 (2005) ("Texas . . . requires the converted document to be tangible, severely limiting the

scope of what can be protected.").[3]

The *Quantlab* court recently rejected a plaintiff's argument that intangible property should

be the basis for a conversion claim under Texas law:

> Quantlab maintains that Texas law should apply to all personal
> property, tangible or intangible.  In support of this position, Quantlab
> notes that *Waisath* [*v. Lack's Stores*, 474 S.W.2d 444 (Tex. 1971)],
> the leading Texas Supreme Court case, does not expressly impose a
> requirement of tangibility.  However, as Quantlab acknowledges,
> courts have cited *Waisath* for the very proposition that tangibility is
> required.  Moreover, Quantlab has not cited any Texas case law
> disposing of the merger requirement, nor is the Court aware of any.
> Therefore, the Court declines to depart from the interpretation of
> Texas law shared by the majority of Texas courts and the Fifth
> Circuit, and holds that conversion applies only to physical property
> under Texas law.

719 F. Supp. 2d at 779 (citations omitted).  Devon Energy did not acknowledge this authority and

has not shown that deleting computer files may be the basis for a conversion claim under Texas law.

It has not met its Rule 56(a) burden.

## C.     The Computer Fraud and Abuse Act

Devon Energy claims that Westacott's deletion of the Barnett Shale information violated

subsection (a)(5)(A) of the CFAA, which provides that anyone who "knowingly causes the

transmission of a program, information, code, or command, and as a result of such conduct,

intentionally causes damage without authorization, to a protected computer" commits a federal

---

[3]     At least one court has declined to follow *Thyroff* in interpreting another state's law.  *See In re TJX Cos. Retail Sec. Breach Litigation*, 527 F. Supp. 2d 209, 211–13 (D. Mass. 2007) (Massachusetts law).  The consistent refusal of Massachusetts state courts to expand the conversion remedy to intangible property supported this decision.  *Id.* at 212–13.

crime.  18 U.S.C. § 1030(a)(5)(A).  The CFAA defines damage as "any impairment to the integrity

or availability of data, a program, a system, or information."  *Id.* § 1030(e)(8).  Section 1030(g)

allows a private right of action by "[a]ny person who suffers damage or loss by reason of a

violation" of the CFAA under certain circumstances, including when the offense results in "loss to

1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  *Id.* § 1030

(c)(4)(A)(i)(I), (g); *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156–57 (5th Cir. 2006).

Damages under subsection (c)(4)(A)(i)(I) are limited to economic damages.  *Id.* § 1030(g); *A.V. ex

rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646–47 (4th Cir. 2009); *Creative Computing v.

Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004).

The Fifth Circuit has not interpreted the current version of § 1030(a)(5)(A).[4]  Courts

interpreting the statute have held that a § 1030(a)(5)(A) violation requires: (1) the knowing

transmission of a program, information, code, or command; (2) to a protected computer; and (3) that

the transmission causes intentional damage without authorization.  *Wentworth-Douglas Hosp. v.

Young & Novis Prof'l Assoc.*, Civ. No. 10-cv-120-SM, 2010 WL 3023331, at *3 (D. N.H. Jul. 28,

2010); *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, No. 09-13638, 2010 WL 1923814, at

*3 (E.D. Mich. May 12, 2010); *Hayes v. Packard Bell, NEC, Inc.*, 193 F. Supp. 2d 910, 912 (E.D.

Tex. 2001); *Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 676 (E.D. Tex. 2001).

Courts have held that the CFAA must be construed narrowly, even in civil actions, because the same

sections that give rise to civil remedies also give rise to criminal penalties.  *Oracle Corp. v. SAP AG*,

734 F. Supp. 2d 956, 967 (N.D. Cal. 2010); *Lockheed Martin Corp. v. Speed*, 2006 WL 2683058,

---

[4]    In 2008, Congress changed the section numbering.  Current subsection (a)(5)(A) was then subsection (a)(5)(A)(i).
*See* An Act to Amend Title 18, United States Code, to Provide Secret Service Protection to Former Vice Presidents, and
for Other Purposes, Pub. L. No. 110-326, § 204(a)(1) (2008).  No Fifth Circuit opinion interpreted subsection
(a)(5)(A)(i).

at *7 (M.D. Fla. Aug. 1, 2006); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (using the rule of lenity to interpret a criminal statute that was being enforced in a civil action).

Devon Energy contends that its evidence that Westacott deleted the data entitles it to summary judgment on its CFAA claim.  CFAA requires a showing that the defendant "intentionally" "impair[ed] . . . the availability of data."  *See* 18 U.S.C. § 1030 (a)(5)(A) (requiring "intentionally caus[ing] damage"), (e)(8) (defining "damage").  *Kalow & Springnut, LLP v. Commence Corp.*, Civ. A. No. 07-3443(FLW), 2008 WL 2557506, at *3 (D. N.J. June 23, 2008) (dismissing a complaint under Rule 12(b)(6) that failed to allege intent to damage).  Cases interpreting the CFAA have emphasized this point.  In *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956 (N.D. Cal. 2010), the plaintiffs alleged that the defendant's heavy downloading activity slowed data transmission on their servers.  The parties moved for summary judgment.  *Id.* at 958.  The defendant contended that "simply asserting that the downloading or access was intentional is not sufficient—plaintiffs must also allege and prove that [the defendant] specifically 'intended' to 'cause damage.'"  *Id.* at 964. The court concluded that it was unclear whether the defendant's actions caused damage and that the record was "inconclusive as to whether any 'damage' was 'intentional.'  Undoubtedly any copying of plaintiffs' files was deliberate; it is not clear, however, whether in copying the files, [the defendant] intended to cause damage."  *Id.*

Similarly, in *Pulte Homes, Inc. v. Loborers International Union of North America*, No. 09-13638, 2010 WL 1923814, at *3 (E.D. Mich. May 12, 2010), the court considered allegations under subsection (a)(5)(A) that the union's members intentionally caused damage to the plaintiff's computer systems by encouraging people to send e-mails, overwhelming its employees' inboxes. The court acknowledged that the plaintiff had asked union officials not to continue sending e-mails, but the plaintiff had never informed the union that the e-mails impaired its computer network.  *Id.*

The court dismissed the complaint under Rule 12(b)(6) for failing sufficiently to allege intentional damage. *Id.*; *see also Czech v. Wall Street on Demand, Inc.*, 674 F. Supp. 2d 1102, (D. Minn. 2002) (holding that allegations of sending unwanted text messages was not actionable under subsection (a)(5)(A)'s predecessor because the complaint's allegations did not plausibly allege intentional damage by incapacitating or slowing the cell phones).

The Fifth Circuit has acknowledged that when the relevant testimony and evidence are disputed, intent is generally "a factual question uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses." *HEI Res. E. OMG, Joint Venture v. Evans*, 2011 WL 594653, at *3 (5th Cir. Feb. 18, 2011) (quotations omitted); *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 205 (5th Cir. 2010); *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 144 (5th Cir. 2004); *Beijing Metals & Minerals v. Am. Bus. Ctr.*, 993 F.2d 1178, 1185 (5th Cir. 1993).  Westacott asserts that he intended to delete only personal information from his Devon Energy computer.  He maintains that if he deleted any Barnett Shale data not backed up on Devon's network, he did so "accidentally."  He has explained that he believed the file was backed up on his network drive and that Devon Energy backed up such files.  Devon Energy has not contended that, had the file remained easily accessible on the network drive, any "damage" would have occurred.  Because Westacott's intent to cause damage presents a triable issue, Devon Energy is not entitled to summary judgment that Westacott violated subsection (a)(5)(A) of the CFAA.

## IV.    Conclusion

Devon Energy's motion for partial summary judgment is denied.  Westacott's motion to strike is denied.  The motions *in limine* are denied without prejudice to reasserting them in light of this Memorandum and Opinion.  A status conference is set for **April 8, 2011** at 5:00 p.m.

SIGNED on March 24, 2011, at Houston, Texas.

20

Lee H. Rosenthal
United States District Judge

21